IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. CR20-4092-LTS |
| vs. | ) ) ) | |
| RICARDO CASTILLO JR., | ) ) ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

I.  INTRODUCTION ............................................................................................... 1

II.  WITNESSES ..................................................................................................... 2

III. EXHIBITS .......................................................................................................... 2

IV. FACTUAL BACKGROUND ........................................................................... 3

V.  LAW & ARGUMENT ....................................................................................... 9

   **A. Alorica's Warrantless Search of Defendant's Work-Issued
   Computer Did Not Violate the Fourth Amendment ......................... 9**

   **B. Mr. Siller and Mr. Elrick Did Not Work as Government Agents .. 16**

VI. CONCLUSION ............................................................................................... 20

COMES NOW the United States of America and requests that this Court deny defendant's motion to suppress evidence. (Docket No. 25).

I. **Introduction**

On December 8, 2020, a grand jury returned a two-count indictment against defendant charging him with: Count 1: receipt of child pornography between on or

about July 2017 to December 2018, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); and Count 2: possession of child pornography on or about July 2017 to January 3, 2019, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). (Docket 2).

On February 26, 2021, defendant filed the instant motion to suppress the incriminating evidence from defendant's work-issued computer arguing that he had an expectation of privacy to his work-issued computer. (Docket 25-1). Additionally, defendant argues Lamont Siller and Doug Elrick acted as agents of the government in searching his work-issued computer which rendered the search illegal. (*Id*.). For the reasons discussed in this brief, the court should deny defendant's motion to suppress evidence.

## II. Witnesses

The government intends to call the following witnesses:

1. Lamont Siller, Vice President of Global Security at Alorica
2. Doug Elrick, Director of Forensic Services at Digital Intelligence
3. Detective Ryan Denney, Sioux City Police Department

## III. Exhibits

The government will seek to introduce the following exhibits:

1. Government Exhibit 1: Alorica Employment Information Regarding Defendant
2. Government Exhibit 2: Excerpt from 2017 Alorica Employee Handbook
3. Government Exhibit 3: Excerpt from 2018 Alorica Employee Handbook
4. Government Exhibit 4: Spreadsheet Regarding Alorica's Dissemination of the 2017 and 2018 Employee Handbooks to Defendant
5. Government Exhibit 5: Spreadsheet Regarding Defendant's Acknowledged Status of Alorica's 2017 Employee Handbookt

2

## IV. Factual Background

### A. Defendant's Employment at Alorica

Defendant was hired by Alorica in 2006. (Gov't Exh. 1). Alorica is a customer experience company with offices around the world. (https://www.alorica.com/who-we-are/) (last visited March 12, 2021). Defendant worked as an IT Telecommunications Manager for Alorica and primarily worked from home in Sioux City. (*Id*.). As part of his employment, Alorica provided defendant with a work-issued computer on May 23, 2017. (*Id*.). This computer was reimaged with a clean image prior to being set up for defendant. (*Id*.). Defendant retained this work-issued computer until January 3, 2019.

In the course of his employment at Alorica, defendant was required to comply with the policies in Alorica's employee handbooks. (Gov't Exh. 2 at 2; Gov't Exh. 3 at 2). In particular, the 2017 and 2018 Employee Handbooks state, "This handbook applies to all employees of Alorica, Inc. ("Alorica") in the United States, including Alorica subsidiaries and affiliated entities (the "Company"). As an employee, it is your responsibility to read and comply with the policies in this Handbook." (*Id*.).

Also included in the two handbooks was the following section:

Permitted Use of Internet and Company Technology

> The computer network is the property of Alorica and is to be used for legitimate business purposes. Users are provided access to the computer network and telephone access to assist them in the performance of their jobs. Additionally, certain employees ("Users")

3

may also be provided with access to the Internet through the computer network. All Users have a responsibility to use the Company's computer and telephone resources as well as the Internet in a professional, lawful and ethical manner. Abuse of the computer network or the Internet may result in corrective action, including possible termination, and civil and/or criminal liability.

Computers, telephones, computer systems, and electronic media equipment (including computer accounts, laptop computers, cellular phones, printers, networks, software, electronic mail, Internet access connections, etc.) at Alorica are provided for the use of some employees for business-related use.

Regarding computer information, voicemail, email, or letters addressed to a Company address, you have no privacy rights to this information. Unless otherwise prohibited by law, Alorica may open and view or listen to this information as it sees fit. It is the responsibility of Alorica employees to see that these information systems are used in an efficient, ethical, and lawful manner. The use of the information systems is a privilege extended by Alorica, which may be withdrawn at any time. Your use of the computer systems may be suspended immediately upon the discovery of a possible violation of these policies. A violation of the provisions of this policy may result in corrective action up to and including termination.

Computer resources include, but are not limited to: host computers, file servers, application servers, communication servers, mail servers, fax servers, web servers, workstations, standalone computers, laptops, software, data files, and all internal and external computer and communications networks that may be accessed directly or indirectly from our computer network.

You should not have any expectation of privacy in anything you create, store, send or receive on the computer system. The computer system belongs to Alorica and may be used only for business purposes. Alorica may access and review any material of the user at any time.

You expressly waive any right of privacy in anything you create, store, send, or receive on the computer or through the Internet or any other computer network.

(Gov't Exh. 2 at 5-6; Gov't Exh. 3 at 5-6). Furthermore, both handbooks include a section entitled, "Computer Network Use Limitations – Prohibited Activities", which reads,

> Without prior written permission from Alorica, the Company's computer network may not be used to disseminate, view, store or download commercial or personal advertisements, solicitations, promotions, destructive code (e.g., viruses, Trojan horse programs, etc.) or any other unauthorized materials or software including personal software. Company technology systems may never be utilized to harass, intimidate or otherwise annoy another individual or organization. Material that is fraudulent, harassing, sexually explicit, profane, obscene, intimidating, defamatory, or otherwise unlawful or inappropriate may not be sent internally or externally by email or other form of electronic transmission or displayed on or stored in any Company equipment. If you encounter or receive this kind of material, you should immediately report the incident to your supervisor or the local Human Resources Manager.

(Gov't Exh. 2 at 3; Gov't Exh. 3 at 3). Alorica emailed the 2017 Handbook to defendant on August 11, 2017, and it was acknowledged by defendant that same day. (Gov't Exh. 4; Gov't Exh. 5). Alorica emailed the 2018 Handbook to defendant on October 21, 2018. (Gov't Exh. 4).

Alorica terminated defendant's employment on January 11, 2019, for violating company policies. (Gov't Exh. 1).

### B. Investigation

On December 28, 2018, Lamont Siller left a message for the Sioux City Police Department. (Def. Exh. A at 2). At the time, Mr. Siller was the Vice President of Global Security for Alorica and was located in Plano, Texas. (*Id.*; Gov't Exh. 1). Sergeant Jeremy McClure contacted Mr. Siller regarding the

message. (*Id*.). Mr. Siller introduced himself and explained he was doing a routine check of an Alorica employee's work-issued computer and that during this check, he located search terms and websites visited in this employee's history that would indicate he was searching for and downloading child pornography. (*Id*.). Mr. Siller identified the Alorica employee as being Rick Castillo, the defendant. (*Id*.). Mr. Siller informed Sgt. McClure that the computer belongs to Alorica, that he was notifying their human resources department and that Alorica will more than likely act sooner than later on this information. (*Id*. at 2-3.). Mr. Siller provided Sgt. McClure with defendant's home address in Sioux City, Iowa, as well as his phone number. (*Id*. at 3.).

On December 31, 2018, this case was assigned to Sioux City Police Detective, Ryan Denney. (Def. Exh. A at 3). Det. Denney contacted Mr. Siller and learned that defendant had been provided a work-issued computer by Alorica to conduct work from home for Alorica. (*Id*.). Mr. Siller informed Det. Denney that defendant's work-issued computer had suspicious searches consistent with potential child pornography but that Alorica did not have access to the content on defendant's work-issued computer. (*Id*.). As such, Mr. Siller was requesting law enforcement to go to defendant's residence and ask if he would voluntarily give the work-issued computer to the officers to return to Alorica for review. (*Id*.).

On January 3, 2019, Det. Denney and Detective John Sanders went to defendant's residence and knocked on the door just before 1:00 p.m. (Def. Exh. A

6

at 3-4). After a short while, an individual answered the door and identified himself as Ricardo Castillo. (*Id.* at 3.). Officers advised him that Alorica was requesting that he voluntarily return Alorica's work-issued computer due to suspicious searches. (*Id.*). Defendant told law enforcement to wait a minute and he shut the door. (*Id.*).

Det. Denney called Mr. Siller and advised him that defendant answered the door, had gone back inside his residence, and was not returning to the door. (Def. Exh. A at 4). Mr. Siller informed Det. Denney that he was going to have defendant's supervisor call him and see if defendant would bring the work-issued computer to the officers. (*Id.*).

After approximately 15 minutes, defendant returned to the door and invited officers into his residence. (*Id.*). Defendant denied that there would be anything suspicious on his computer. (*Id.*). Defendant indicated that no one else had access to his work-issued computer besides him. (Def. Exh. A at 5). Det. Denney reported that defendant willingly gave officers his work-issued computer and charging cable. (*Id.* at 4.).

After retrieving Alorica's computer, Det. Denney called Mr. Siller and advised him that they had Alorica's computer. (Def. Exh. A. at 4). Mr. Siller advised that Alorica would send a person to retrieve the computer from officers. (*Id.*). Mr. Siller advised that if they found anything suspicious on the computer then they would notify law enforcement. (*Id.*).

7

On January 4, 2019, Alorica sent Doug Elrick to retrieve Alorica's computer from the police station. (*Id.*). Mr. Elrick is the Director of Forensic Services at Digital Intelligence, a private company, and he was contracted by Alorica to examine Alorica's computer. (*Id.*). Mr. Elrick provided law enforcement with a receipt that he was taking possession of Alorica's computer. (*Id.*). He advised that he would turn the computer over to the law enforcement if his examination of Alorica's computer revealed anything suspicious. (*Id.*).

After a couple of days, Mr. Elrick contacted Det. Denney and advised him that he found a deleted folder on defendant's work-issued computer's hard drive and that it did contain obvious child pornography. (Def. Exh. A at 4-5). Mr. Elrick advised that because it contained child pornography that he would be turning over Alorica's computer to the Internet Crimes Against Children agency who then turned it over to the Division of Criminal Investigation. (*Id.* at 5.).

Subsequently, Det. Denney procured a state search warrant to search defendant's work-issued computer on January 23, 2019. (*Id.*; Def. Exh. B). The law enforcement forensic examination revealed that defendant's work-issued computer had a hidden folder containing child pornography that was labeled "New Folder." (Def. Exh. A at 5). This folder had been created at 1:04 p.m. on January 3, 2019; which is during the time period Det. Denney and Det. Sanders arrived at defendant's residence and were waiting for defendant to return to the door after making initial contact with him. (*Id.*).

## V. Law & Argument

### A. Alorica's Warrantless Search of Defendant's Work-Issued Computer Did Not Violate the Fourth Amendment

"The Fourth Amendment protects persons against unreasonable searches and seizures *by the government*." *United States v. Stephen*, 984 F.3d 625, 629 (8th Cir. 2021) (emphasis added) (quoting *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013)). For the reasons discussed in Section B of this brief, neither Mr. Siller or Mr. Elrick were working as government agents in their internal investigation against defendant. Accordingly, Alorica's warrantless search of defendant's work-issued computer did not violate the Fourth Amendment.

#### i. Defendant Did Not Have a Legitimate Expectation of Privacy in his Work-Issued Computer

"The person challenging the constitutionality of a search 'has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society will accept.'" *United States v. Bailey*, 272 F. Supp. 822, 834 (D.Neb. 2003) (quoting *United States v. Mendoza*, 281 F.3d 712, 715 (8th Cir. 2002)). Without a legitimate and constitutionally protected expectation of privacy in the item to be searched, defendant cannot successfully claim a Fourth Amendment violation. (*Id.*) (citing *United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002)). "Employees may have reasonable expectations of privacy within their workplaces which are constitutionally protected against intrusions by police." (*Id.*) "However, an employee's expectation of privacy in the

9

content of offices, desks, and files may be reduced by an employer's practices, procedures, and legitimate regulation over the use of the employer's property." (*Id.*) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987)). "The question of whether an employee has a reasonable expectation of privacy in his work area must be determined on a case-by-case basis." (*Id.*).

In *Bailey*, an investigation revealed Bailey accessed child pornography from his work-issued computer as an employee at American Family Insurance, a private company. (*Id.* at 830). The district court stated,

> An employee cannot claim a justified expectation of privacy in computer files where the employer owns the computer; the employee uses the computer to obtain access to the internet and e-mail through the employer's network; the employee was explicitly cautioned that information flowing through or stored on computers within the network cannot be considered confidential, and where computer users were notified that administrators and others were free to view data downloaded from the internet.

(*Id.* at 835). Ultimately the district court held Bailey did not have a subjective expectation of privacy in his work-issued computer because he was aware American Family Insurance could search his work-issued computer activity. (*Id.* at 835-36). The district court also held that Bailey did not have an objective expectation of privacy in the contents of his work-issued computer because it "is not one that society is willing to accept and protect under the Fourth Amendment." (*Id.* at 836-37).

10

Similarly, in *Muick v. Glenayre Electronics*, 280 F.3d 741, 742 (7th Cir. 2002), Muick had received and possessed child pornography on his work-issued computer. The Seventh Circuit held Muick had no right of privacy in the computer that his private-employer lent him for use in the workplace. (*Id.* at 743). *Muick* distinguished between private sector and public-sector employers by noting that an employee's privacy right is enforceable under the stricter Fourth Amendment standard if the employer is a public entity, but a private-employer was not subject to that same standard. (*Id.*). Ultimately the Court found that because the employer announced that it could inspect the laptops it furnished to its employees, Muick did not have any reasonable expectation of privacy in the work-issued computer. (*Id.*). The Court further stated,

> The laptops were Glenaryre's property and it could attach whatever conditions to their use it wanted to. They didn't have to be reasonable conditions; but the abuse of access to workplace computers is so common (workers being prone to use them as media of gossip, titillation, and other entertainment and distraction) that reserving a right of inspection is so far from being unreasonable that the failure to do so might well be thought irresponsible.

(*Id.*).

Here, defendant did not have a legitimate expectation of privacy in his work-issued computer because defendant was aware of Alorica's express policies limiting employee usage of the network, internet and company technology. First, defendant was aware of—and subject to—Alorica's policies which were emailed to him on August 11, 2017, and October 21, 2018. (Gov't Exh. 2 at 2; Gov't Exh. 3 at

11

2; Gov't Exh. 4; Gov't Exh. 5). Second, Alorica's only permitted use of the network, internet and company technology was for "legitimate business purposes" and in a "professional, lawful and ethical manner." (Gov't Exh. 2 at 5; Gov't Exh. 3 at 5). Specifically, the "Permitted Use of Internet and Company Technology" section stated,

> *The computer network is the property of Alorica and is to be used for legitimate business purposes.* Users are provided access to the computer network and telephone access to assist them in the performance of their jobs. Additionally, certain employees ("Users") may also be provided with access to the Internet through the computer network. *All Users have a responsibility to use the Company's computer and telephone resources as well as the Internet in a professional, lawful and ethical manner.* Abuse of the computer network or the Internet may result in corrective action, including possible termination, and civil and/or criminal liability.
>
> Computers, telephones, computer systems, and electronic media equipment (including computer accounts, laptop computers, cellular phones, printers, networks, software, electronic mail, Internet access connections, etc.) at *Alorica are provided for the use of some employees for business-related use.*
> . . . .
>
> You should not have any expectation of privacy in anything you create, store, send or receive on the computer system. *The computer system belongs to Alorica and may be used only for business purposes.* Alorica may access and review any material of the user at any time.

(Gov't Exh. 2 at 5-6; Gov't Exh. 3 at 5-6) (emphasis added). Additionally, the "Computer Network Use Limitations – Prohibited Activities" section listed additional limitations Alorica placed on employee use of Alorica's computer network to include prohibiting employees from storing material that is "sexually explicit . . . obscene . . . or otherwise unlawful" and directing

12

the employee to contact Alorica's HR immediately if they encounter any such materials. (Gov't Exh. 2 at 3; Gov't Exh. 3 at 3). The section provides,

> Without prior written permission from Alorica, the Company's computer network may not be used to disseminate, view, store or download commercial or personal advertisements, solicitations, promotions, destructive code (e.g., viruses, Trojan horse programs, etc.) or any other unauthorized materials or software including personal software. Company technology systems may never be utilized to harass, intimidate or otherwise annoy another individual or organization. *Material that is fraudulent, harassing, sexually explicit, profane, obscene, intimidating, defamatory, or otherwise unlawful or inappropriate may not be sent internally or externally by email or other form of electronic transmission or displayed on or stored in any Company equipment. If you encounter or receive this kind of material, you should immediately report the incident to your supervisor or the local Human Resources Manager.*

(*Id.*) (emphasis added). Third, Alorica's network, internet, and company technology policies explicitly stated that employees to not have privacy rights to anything on the computer systems or networks.

> *Regarding computer information, voicemail, email, or letters addressed to a Company address, you have no privacy rights to this information.* Unless otherwise prohibited by law, Alorica may open and view or listen to this information as it sees fit. It is the responsibility of Alorica employees to see that these information systems are used in an efficient, ethical, and lawful manner. The use of the information systems is a privilege extended by Alorica, which may be withdrawn at any time. Your use of the computer systems may be suspended immediately upon the discovery of a possible violation of these policies. A violation of the provisions of this policy may result in corrective action up to and including termination.
>
> Computer resources include, but are not limited to: host computers, file servers, application servers, communication servers, mail servers, fax servers, web servers, workstations, standalone computers, laptops, software, data files, and all internal and external computer and

13

> communications networks that may be accessed directly or indirectly from our computer network.
>
> *You should not have any expectation of privacy in anything you create, store, send or receive on the computer system.* The computer system belongs to Alorica and may be used only for business purposes. Alorica may access and review any material of the user at any time.
>
> *You expressly waive any right of privacy in anything you create, store, send, or receive on the computer or through the Internet or any other computer network.*

(Gov't Exh. 2 at 6; Gov't Exh. 3 at 6) (emphasis added). Fourth, Alorica's policies explicitly provided the employer the right to access an employee's computer information "as it sees fit" and that "Alorica may access and review any material of the user at any time."¹ (*Id.*).

---

¹ The government notes that *United States v. Thorn*, 375 F.3d 679 (8th Cir. 2004) is also instructive even though the facts of that case have a stricter standard because Thorn is an employee of a public employer. V*acated and remanded*, 553 U.S. 1112 (2005) (for consideration of sentence in light of *United States v. Booker*), *aff'd*, 413 F.3d 820 (8th Cir. 2005). In *Thorn*, the defendant's employer discovered child pornography on defendant's work-issued computer when they were conducting an internal investigation regarding potential computer misconduct. (*Id.* at 681-83). The Eighth Circuit held that Thorn did not have a reasonable expectation of privacy to his work-issued computer for several reasons. (*Id.* at 683-84.). First, Thorn was made aware of the employer's computer-policy which barred unauthorized use of the employer's computer. (*Id.* at 683.). Second, the employer's computer policy provided that employees had no personal right of privacy with respect to their use of the work-issued computers. (*Id.*). Third, the employer's computer policy explicitly provided the employer the right to access all of the employer's computers in order to audit their use. (*Id.*). Ultimately the Court held "in light of the express limits placed upon his computer use by the agency's computer-use policy, the District Court correctly determined that Thorn had no legitimate expectation of privacy in the contents of his office computer." (*Id.* at 683-84) (citing *United States v. Angevine*, 281 F.3d 1130, 1134-35 (10th Cir. 2002) ("rejecting claim of reasonable expectation of privacy in data an employee downloaded from the Internet to a state university's computers when the university had an express policy that reserved the right to randomly audit Internet

14

For these reasons, defendant did not have either a subjective expectation of privacy or objectively reasonable expectation of privacy in his work-issued computer. Therefore, the court should deny his motion to suppress on this issue.

### ii. Even if the Court Finds a Legitimate Expectation of Privacy Existed, the Employer Could Consent to the Search

A "well-settled" exception to a warrantless search "is where valid consent is obtained by the government." *United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007). "In proving voluntary consent, the government 'is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" (*Id.*) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)).

In *Ziegler*, the Ninth Circuit held that Ziegler's employer could give valid consent to a search of the hard drive of Ziegler's work-issued computer "because the computer is the type of workplace property that remains within the control of the employer 'even if the employee has placed personal items in [it].'" (*Id.*) (quoting *Ortega*, 480 U.S. at 716). Here, Alorica owned its work-issued computers,

---

use"); *see United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) ("concluding the government employee had no legitimate expectation of privacy in files downloaded from the Internet when government employer had express policy limiting computer usage to official government business and permitted random audits of computer usage to ensure proper use of government resources"). The facts in the instant case are analogous to *Thorn*, and subject to a less-strict standard because defendant is an employee of a private company.

15

computer systems, and computer network as explicitly stated in its internet, network, and computer technology policies. (Gov't Exh. 2 at 5-6; Gov't Exh. 3 at 5-6). Further, Alorica retained its right to access an employee's computer information "as it sees fit" and to "access and review any material of the user at any time." (Gov't Exh. 2 at 6; Gov't Exh. 3 at 6). Accordingly, Alorica could provide the government valid consent to search defendant's work-issued computer.

### B. Mr. Siller and Mr. Elrick Did Not Work as Government Agents

"[T]he Fourth Amendment does not apply to private-citizen searches 'unless that private citizen is acting as a government agent.'" *Stephen*, 984 F.3d at 629 (quoting *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004)). "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all of the circumstances." (*Id.*).

The court considers three factors when making this determination: "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020) (quoting *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010)). "A defendant bears the burden of providing by a preponderance of the evidence that a private party acted

16

as a government agent." (*Id.*) (quoting *United States v. Highbull*, 894 F.3d 988, 992 (8th Cir. 2018)).

For the reasons discussed below, all three factors weigh in favor that Mr. Siller and Mr. Elrick did not act as government agents.

### i. The Government Acquiesced to Alorica's Search of its Own Property Which Was Not Intrusive Conduct

The government had knowledge of Alorica's internal investigation regarding alleged misuse of defendant's work-issued computer. The government acquiesced to Alorica's search of defendant's work-issued computer because Alorica is able to search its own property. *See United States v. Elmquist*, No. 07-00245-01-CR-W-ODS, 2008 WL 3895971 at *5 (W.D.MO. Aug. 18, 2008) (finding "defendant's insinuation that QualServ was required to obtain a warrant when it searched its own computers for violations of law or company policies is rejected"). At no time did the government request Alorica or Mr. Elrick to search defendant's work-issued computer. Alorica's search of its own property is not intrusive conduct. Therefore, the government's knowledge and acquiescence to Alorica's internal search of its own property does not establish an agency finding.

### ii. Mr. Siller and Mr. Elrick Investigated Defendant's Work-Issued Computer to Further Their Own Purposes

In order to prevail on this factor, the defendant must establish that either Mr. Siller or Mr. Elrick was motivated solely or primarily by the desire to assist

17

the police.  *See Highbull*, 894 F.3d at 992.  The defendant cannot establish this factor for either entities.

Here, Alorica has an independent interest in ensuring its employees are abiding by the network, internet, and computer technology policies of the company. Mr. Siller is employed by Alorica as the Vice President of Global Security.  (Gov't Exh. 1).  During a routine check, Alorica discovered defendant had suspicious searches indicative of child pornography on his work-issued computer which is in violation of Alorica network, internet, and computer technology policies.  (Def. Exh. A at 2; Gov't Exh. 2 at 3-6; Gov't Exh. 3 at 3-6).  Subsequently, Mr. Siller conducted an internal investigation regarding defendant's use of Alorica's network, internet and computer technologies in violation of company policies.  As part of Alorica's internal investigation, they hired a third-party contractor, Mr. Elrick, to conduct a forensic examination of the work-issued computer—a device that contains proprietary information valuable to Alorica.  Mr. Elrick and Alorica provided defendant's work-issued computer to law enforcement after Alorica's internal investigation revealed defendant violated several Alorica policies with criminal activity.  Accordingly, Mr. Siller's sole or primary motivation was not to assist law enforcement but rather to complete Alorica's internal investigation.

Similarly, Mr. Elrick had an independent motivation to complete the work order of his employer, Alorica.  Mr. Elrick was hired by Alorica, not the government, to retrieve the computer and complete an examination of its contents.

18

(Def. Exh. A at 4).  After a couple days—and after Mr. Elrick's examination for Alorica's internal investigation was complete—Mr. Elrick informed law enforcement that defendant's work-issued computer contained child pornography. Accordingly, Mr. Elrick's sole or primary motivation was not to assist law enforcement but rather to complete his work order for Alorica.

Though Mr. Siller and Mr. Elrick offered to inform law enforcement if criminal contraband was discovered following Alorica's internal investigation, this does not establish that either entity was solely or primarily motivated to assist law enforcement.  *See Highbull*, 894 F.3d at 993 (holding that a mother who retrieved defendant's phone which contained contraband images of the mother's minor daughter was not motivated solely or primarily to assist law enforcement but also had a compelling personal motive to protect her daughter); *see United States v. Smith*, 383 F.3d at 705 (holding a FedEx manager's dual intent of providing assistance to officers and ensuring her employer was not being used as a means of carrying contraband did not constitute a finding of agency).

For these reasons, defendant cannot establish this factor weighs in favor of an agency finding.

### iii. The Government Did Not Request Anything of Mr. Siller or Mr. Elrick

The government did not direct or request anything of Mr. Siller or Mr. Elrick.  To the contrary, Alorica requested officer assistance to retrieve their computer from defendant as part of their internal investigation.  (*See* Def. Exh. A

19

at 2-3). Alorica, not the government, directed Mr. Elrick to retrieve Alorica's computer from law enforcement. (*Id*. at 4.). Alorica, not the government, contracted Mr. Elrick to examine Alorica's computer as part of their internal investigation. (*Id*.). After Alorica's internal investigation revealed defendant clearly violated Alorica's network, internet and computer technology policies by downloading child pornography onto his work-issued computer, Mr. Elrick provided Alorica's computer to law enforcement. (*Id*. at 4-5.).

Accordingly, there is no evidence to suggest that Mr. Siller or Mr. Elrick ever acted at the request of the government. Therefore, defendant cannot establish this factor weighs in favor of an agency finding.

## VI. Conclusion

For the aforementioned reasons, the Court should deny defendant's motion to suppress.

Respectfully submitted,

SEAN R. BERRY
Acting United States Attorney

By: */s/ Mikala M. Steenholdt*

MIKALA M. STEENHOLDT
Assistant United States Attorney
600 Fourth Street, Suite 670
Sioux City, IA 51101
(712) 255-6011
(712) 252-2034 (fax)
Mikala.Steenholdt@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, on March 12, 2021.

UNITED STATES ATTORNEY

BY: s/ Mikala Steenholdt

cc: Timothy Herschberger