IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICARDO CASTILLO, JR.,<br><br>Defendant. | No. CR20-4092-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS** |

## I. INTRODUCTION

This case is before me on a motion (Doc. 25) to suppress filed by defendant Ricardo Castillo. The Government filed a resistance (Doc. 33) and Castillo replied (Doc. 37). I conducted an evidentiary hearing on March 25, 2021. Doc. 41. Government Exhibits 1 through 6 and Defense Exhibits A through C were admitted into evidence. *Id.* The Government also presented testimony from (1) Lamont Siller, an employee of Castillo's former employer, Alorica, Inc. (Alorica), (2) Doug Elrick, a digital forensics expert and (3) Ryan Denney, a detective with the Sioux City Police Department (SCPD). *Id.* The parties then submitted post-hearing briefs after the transcript of the hearing was prepared. Docs. 45, 50, 52.

## II. BACKGROUND

In December 2018, Siller, the Vice President of Global Security for Alorica, contacted the SCPD regarding possible child pornography offenses committed on a

company laptop used by one of its employees, Castillo.[1] Siller informed the SCPD that he discovered searches and file names during a routine history check that suggested Castillo was searching for and downloading child pornography.[2] He could not access or view file contents on the laptop, however, so he could not confirm whether there was child pornography on the laptop. Because Castillo worked remotely, and Alorica had no offices nearby, Siller asked the SCPD to retrieve the laptop so Alorica could conduct an internal investigation.

On January 3, 2019, two SCPD detectives went to Castillo's home in Sioux City, Iowa. After Castillo came to the door, the detectives told him about their conversation with Siller and Alorica's request that its laptop be returned. Castillo asked the detectives to wait and went back inside, shutting the door behind him. After waiting some time, the detectives called Siller to report that they had made contact with Castillo but he had returned back inside his home and had not returned to the door. Siller said he would ask Castillo's supervisor to call and let him know the officers were there on behalf of Alorica.

Approximately 15 minutes after he shut the door, Castillo returned and invited the detectives into his home. After Castillo gave them the laptop, the detectives asked if it contained anything about which they should be concerned. Castillo responded that it did not. The detectives also asked Castillo if anyone else had access to the laptop. He again responded no. The detectives left and reported to Siller that they had the laptop. Siller told them that he would send someone to retrieve it from the SCPD.

Alorica retained Elrick to perform a forensic examination on the laptop and he picked it up from the SCPD on January 4, 2019. Sometime before Elrick left, Detective

---

[1] The laptop issued to Castillo was not new, as it had been used by a different employee prior to May 17, 2017. Doc. 34. However, the laptop was wiped clean before it was issued to Castillo on May 23, 2017. *Id*.

[2] The suspicious searches included phrases such as "11 YO FUCK MP4," "12 Y CUM IN MOUTH MP4" and "11YO DANCE STRIP SPREAD AVI." Doc. 26-1 at 3.

Denney asked him to let the SCPD know if he found anything they needed to know about. Elrick told Denney that the SCPD would be notified if he discovered illegal materials.

While examining the laptop, Elrick discovered a deleted folder that contained child pornography. The folder named "New Folder," was located in an unusual location and appeared to have been deleted shortly after the SCPD detectives first contacted Castillo at his home. Elrick immediately ceased his examination and reported his findings to Alorica, who then arranged a conference call with law enforcement. Alorica also arranged a telephonic interview with Castillo, during which Castillo admitted to downloading adult pornography on the laptop. He was fired soon thereafter for violating Alorica's computer policy.

Based on the information provided by Elrick and Alorica, Denney obtained a warrant to search Castillo's work laptop. A forensic examination by law enforcement revealed the same deleted folder of child pornography Elrick had discovered. It also revealed that the folder had been deleted shortly after Castillo retreated into his home after the SCPD detectives first contacted him.

On December 8, 2020, the Grand Jury returned an indictment charging Castillo with receipt of child pornography (Count 1) and possession of child pornography (Count 2). Doc. 2. In his motion to suppress, Castillo argues that evidence of the child pornography discovered on his work laptop must be suppressed because Elrick and Siller acted as Government agents leading up to and during Elrick's warrantless search and the search therefore violated Castillo's Fourth Amendment rights.

### III. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The exclusionary rule is a judicial remedy created to "compel respect for the constitutional guarant[ees]" of the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 236–38 (2011) (citations omitted). Thus, when a Government search is

deemed unreasonable, the exclusionary rule ordinarily requires "suppression of the evidentiary fruits of the [search]." *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)). Exclusion of evidence is not a right, however, "nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Davis*, 564 U.S. at 236–37 (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations; when the deterrence benefits of suppression do not outweigh its costs, evidence should not be excluded. *Id.*

### IV. DISCUSSION

To suppress the evidence of child pornography found on his work-issued laptop due to a Fourth Amendment violation, Castillo must show three things. First, because the Fourth Amendment's protections do not extend to searches or seizures by private parties acting on their own, he must show that the evidence was obtained through the actions of Government officials, or private parties acting at their direction. *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 614 (1989). Here, that means showing by a preponderance of the evidence that Alorica and its representatives, particularly Elrick, acted as Government agents as they investigated Castillo and searched his laptop for child pornography. *See United States v. Highbull*, 894 F.3d 988, 992 (8th Cir. 2018).

If Castillo can show that the evidence was obtained through Government action, he must then show that a "search" occurred. For purposes of the Fourth Amendment, a search occurs when the Government's investigatory actions violate a person's reasonable expectation of privacy, *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), or trespass upon the areas specifically enumerated in the Fourth Amendment, *United States v. Jones*, 565 U.S. 400, 404–07 (2012). *See also United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016).

Finally, if Castillo shows that the Government, or its agent, performed a search, he must show that the search was unreasonable. *Grady v. North Carolina*, 575 U.S. 306,

4

310 (2015) (per curiam) ("The Fourth Amendment prohibits only *unreasonable* searches."). "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Id.* Generally, a search is unreasonable unless the Government obtains consent or a warrant supported by probable cause. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) ("Although the 'ultimate measure of the constitutionality of a governmental search is "reasonableness,"' our cases establish that warrantless searches are typically unreasonable where 'a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing.'" (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652–53 (1995))); *Skinner*, 489 U.S. at 619 ("Except in certain well-defined circumstances, a search . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."). I will address these issues in turn.

To determine whether a private party acted as a Government agent for purposes of the Fourth Amendment, the Eighth Circuit employs a three-factor test. The factors are "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *Highbull*, 894 F.3d at 992 (alterations in original) (quoting *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010)). The parties generally agree that the SCPD knew of and acquiesced in Alorica's investigation and Elrick's search.[3] They dispute only the second

---

[3] The Government argues that although the SCPD knew that Alorica would search the laptop Castillo used, the search was not sufficiently "intrusive" for the first factor to weigh in favor of an agency relationship. However, the intrusiveness of the private party's conduct goes more to the issue of whether a "search" occurred than whether the private party acted on behalf of the Government. The dispositive question for the first factor is simply whether the Government knew about, and acquiesced in, the private party's conduct. *Highbull*, 894 F.3d at 992 (describing the elements of the first factor as only "knowledge and acquiescence").

5

and third factors – whether Alorica and its representative intended to assist law enforcement and whether the Government requested such assistance.

Castillo argues that the primary intention of Siller's investigation, and Elrick's search, was to assist law enforcement. He points out that Siller reached out to, and worked with, the SCPD to acquire the laptop before evidence could be destroyed, even though it was not Alorica's standard practice to do so. He also notes that when Elrick retrieved the laptop, he assured the SCPD that he would contact them if he discovered illegal materials.

These circumstances do not show that Alorica, Siller or Elrick acted with the intent to assist law enforcement, however. To prove that they did, Castillo must show that their actions were motived solely or primarily by the desire to assist law enforcement. *Highbull*, 894 F.3d at 992. Even showing that they were "motivated in part by a desire to aid law enforcement" is not enough. *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004). Here, Castillo has shown, at most, that any desire Alorica, Siller or Elrick had to assist law enforcement in this case was incidental to preexisting, legitimate business interests.

Siller first discovered evidence of potential child pornography on Castillo's work laptop while carrying out one of his normal duties, performing routine checks on computers used by Alorica employees. Doc. 45 at 8, 33–34. These checks were performed to ensure no dangerous or inappropriate materials were downloaded onto Alorica's computers and to protect Alorica's proprietary information. *Id.* at 33. While it is true that Siller asked the SCPD for help retrieving the laptop for an internal investigation, he did so only because Alorica has no office or other employees near Sioux City and he informed the SCPD that Alorica could not yet confirm that any crime had been committed. *Id.* at 36. He asked only that the SCPD obtain the laptop from Castillo and hold it until Alorica could retrieve it for an internal investigation to protect its own interests. *Id.* at 39–40, 43. Thus, although Alorica and Siller recognized that the Government "had a mutual interest" in addressing any child pornography that may be

discovered on Castillo's laptop, they did not act as Government agents because they monitored their employees' work computers and investigated Castillo "out of [their] own private business interests." *United States v. Ringland*, 966 F.3d 731, 736 (8th Cir. 2020).

The fact that Elrick stated he would advise the SCPD if he discovered illegal material is also unpersuasive. Elrick conducted the forensic examination of Castillo's laptop at the direction of Alorica, his client. Doc. 45 at 62–63, 66. Once he discovered child pornography, he contacted Alorica first, not law enforcement. *Id.* at 63–65. Further, based on his testimony, he told the SCPD that he would contact them if he discovered illegal materials because it is his company's policy to do so. *Id.* at 58, 70. Not doing so would put his company in jeopardy. *Id.* at 70.

Castillo's arguments regarding the third factor, whether the private party acted at the Government's request, fail for similar reasons. As discussed above, Alorica's investigation into Castillo's work laptop began because of Siller's discoveries during a routine search, not because of any Government direction or request. Even though the SCPD was contacted shortly after Siller's discoveries, Siller testified at the hearing that the SCPD never asked him to take any course of action regarding Castillo or his laptop. *Id.* at 39, 42–44, 50. Castillo has failed to show otherwise.

Castillo argues instead that the Government requested assistance from Elrick when he retrieved Castillo's laptop from the SCPD. He notes that Detective Denney testified at the hearing that he told Elrick, "if you find anything that you think we need to know about let us know." *Id.* at 80. Castillo argues that this is sufficient to show that Elrick acted at the Government's request. I disagree. First, asking Elrick to inform the SCPD of the possible results of his search is not the same as asking Elrick to perform the search in the first place. Indeed, regardless of anything said when he picked up the laptop, Elrick testified law enforcement never asked him to search the laptop. *Id.* at 65. The search Elrick conducted is the search Castillo claims violated his Fourth Amendment rights, but the evidence is clear that Elrick retrieved the laptop and conducted the search at the direction of Alorica, which paid him to do so. Castillo has provided no support

7

for its assertion that Denney's statement to Elrick somehow supplanted Alorica's directions as the source of Elrick's motivation.

Second, regardless of how Denney's statement is interpreted, he did not ask Elrick to do anything he would otherwise not have done. Because Elrick was being paid by Alorica to conduct a forensic examination, he would have searched the laptop regardless, even if Denney's statement could be interpreted as a request to conduct a search on behalf of the Government. The same is true of telling the SCPD about the results of the search. Elrick's company's policy required him, or any client he worked for, to report the discovery of illegal materials to law enforcement. The lack of causation between Denney's "request" and Elrick's search is fatal to Castillo's argument.

In short, Castillo has failed to show that Alorica, Siller or Elrick were solely or primarily motivated by the desire to help law enforcement or that the Government requested their assistance. Although the SCPD had knowledge of Siller's investigation and Elrick's search, that knowledge, alone, does not show that they acted as Government agents. Because Elrick searched Castillo's work laptop as a private party, no Fourth Amendment violation occurred.

Even if Siller or Elrick acted as Government agents, however, Castillo's motion must still be denied because he did not have a reasonable expectation of privacy in his work laptop. To show that the Government violated his expectation of privacy in his work laptop, Castillo must show (1) he had a subjective expectation of privacy and (2) his expectation was objectively reasonable. *Azam v. City of Columbia Heights*, 865 F.3d 980, 989 (8th Cir. 2017).

Generally, individuals have a reasonable expectation of privacy in personal computers and their contents. *See United States v. Horton*, 863 F.3d 1041, 1047 (8th Cir. 2017); *see also United States v. Turner*, 839 F.3d 429, 434 (5th Cir. 2016); *but see United States v. Hill*, 750 F.3d 982, 986 (8th Cir. 2014) (finding no reasonable expectation of privacy in computer files that are shared publicly). For work computers, however, the issue is not so clear cut. It is possible for an individual to have a reasonable

expectation of privacy in his or her work-issued computer. *See Biby v. Bd. of Regents, of Univ. of Nebraska at Lincoln*, 419 F.3d 845, 850 (8th Cir. 2005); *see also United States v. Ziegler*, 474 F.3d 1184, 1189–90 (9th Cir. 2007); *Leventhal v. Knapek*, 266 F.3d 64, 73 (2d Cir. 2001). However, factors such as the nature of the workplace and the existence of an employer's practices and policies may limit or eliminate any expectation of privacy that might otherwise exist. *See Biby*, 419 F.3d at 850–51; *United States v. Thorn*, 375 F.3d 679, 683 (8th Cir. 2004), *judgment vacated on other grounds*, 543 U.S. 1112 (2005), *and reinstated*, 413 F.3d 820 (8th Cir. 2005); *United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000).

In *Biby*, the court found no reasonable expectation of privacy when the employer's computer policy informed employees "not to expect privacy if the [employer] has a legitimate reason to conduct a search." *Biby*, 419 F.3d at 850. In *Thorn*, there was no reasonable expectation of privacy when the employer's computer-use policy prohibited using the computer for inappropriate purposes, informed employees that they "ha[d] no personal right of privacy" in the computer and allowed the employer to access all of its "computers in order to audit their use." *Thorn*, 375 F.3d at 683. Likewise, in *Simons* the employer's policy allowed it to "'audit, inspect, and/or monitor' employees' use of the Internet, including all file transfers, all websites visited, and all e-mail messages." *Simons*, 206 F.3d at 398. By contrast, in *Leventhal* the court found that the defendant did have an expectation of privacy because the employer's policy did not address its employees' privacy expectations and the employer usually had access to the computers only for pre-arranged maintenance. *Leventhal*, 266 F.3d at 74.

Here, Alorica has policies regarding computer usage and privacy expectations that preclude finding that Castillo had a reasonable expectation of privacy in his work laptop. Alorica's policy states that its "computer network is the property of Alorica and is to be used for legitimate business purposes." Doc. 34-1 at 5; Doc. 34-2 at 5. It prohibits Alorica's computers from being used to "disseminate, view, store or download" any unauthorized materials and specifically mentions "sexually explicit, profane, obscene,

9

intimidating, defamatory, or otherwise unlawful or inappropriate" content. Doc. 34-1 at 3; Doc. 34-2 at 3. It also states that employees "should not have any expectation of privacy in anything [they] create, store, send or receive on the computer system," that employees "expressly waive any right of privacy in anything [they] create, store, send, or receive on the computer" and that "Alorica may access and review any material of the user at any time." Doc. 34-1 at 6; Doc. 34-2 at 6. There is no dispute that Castillo received and agreed to these policies. Docs. 34-3, 39. Further, each time Castillo logged into Alorica's system to use the laptop, he had to agree to the conditions of a security notice from Alorica that reminded him that "there is no individual expectation of privacy regarding any data placed, transiting, or transacted on th[e] computer" and that "Alorica . . . may access and monitor all data, electronic mail, and voice/video recordings without notice to the user." Doc. 42 at 3.[4]

Castillo argues that he had a reasonable expectation of privacy because of how he used the laptop in his home. He asserts that although Alorica retained ownership of the laptop, it was lawfully in his possession and he alone used it. He notes that Alorica's ability to access, and control, the laptop and its contents was minimal in most circumstances. He also asserts that the actions he took to hide and eliminate the pornographic content on his laptop show that he had a subjective expectation of privacy.

These arguments focus on only one half of the expectation of privacy analysis. Alorica's undisputed policies and practices leave little room to believe that Castillo could have actually expected privacy in the laptop. But even assuming Castillo has shown that he had a subjective expectation of privacy, he has completely failed to show that this

---

[4] Castillo argues that the Government's evidence of Alorica's security notice – a screenshot of the notice Siller took the day of the suppression hearing – should be given little weight because it does not show the notice as it existed during the time Castillo was using the laptop. He asserts the notice has been changed over the years and, thus, the current version is not indicative of its contents during the relevant period of time. I disagree. While it may be true that the notice has been modified to some extent, Siller testified that the substance of the notice has not changed. Doc. 45 at 15–17, 22. There is no evidence to the contrary.

expectation was reasonable. Alorica's practices and policies, including a notice that appeared each time an employee logged into the system, clearly informed its employees that they had no expectation of privacy in how they used Alorica's laptops or in what they may have stored on them. Whatever expectation of privacy Castillo may have had, the clarity of Alorica's policies prevent it from being "one that society is prepared to accept as 'reasonable.'" *Azam*, 865 F.3d at 989 (quoting *DE L'Isle*, 825 F.3d at 431).

Finally, even if Castillo had a reasonable expectation of privacy in the laptop and its contents, and Elrick acted as a Government agent when he conducted the search, the search was not unreasonable because Alorica consented to it. Consent is one of the few but well-settled exceptions to the warrant requirement. *See Davis v. United States*, 328 U.S. 582, 593–94 (1946). To prove voluntary consent, the Government "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). "Common authority to authorize a search rests upon the premise that one '[has] assumed the risk that one of [his] number might permit the common area to be searched.'" *United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007) (alterations in original) (quoting *Matlock*, 415 U.S. at 171 n.7).

Castillo argues that Alorica did not have common authority over the laptop because it was given to him to be possessed and used at home. He asserts that by accepting the laptop for use in his home he did not assume the risk that Alorica would permit others to search it. This argument fails. Alorica retained ownership of the laptop and, as stated in its policies, could suspend or revoke the privilege of using its computers at any time. Doc. 34-1 at 6; Doc. 34-2 at 6; Doc. 45 at 53–54. It also reserved all rights in the content stored on the laptop, whether put there by itself or its employees. Doc. 34-1 at 6; Doc. 34-2 at 6; Doc. 42 at 3. Thus, Alorica had common authority over the laptop. Upon discovering Castillo's apparent misconduct, it retrieved the laptop and retained Elrick to examine it pursuant to that authority. Castillo knew of Alorica's policies and rights in

the laptop and its contents. He cannot now claim that he did not assume the risk that Alorica would give the Government permission to search it if Alorica ever discovered illegal materials. Indeed, Alorica warned of that possibility in its policies, stating that "[a]buse of the computer network or the Internet may result in corrective action, including possible termination, and civil and/or criminal liability." Doc. 34-1 at 5; Doc. 34-2 at 5.

## V. CONCLUSION

For the reasons set forth herein, Castillo's motion (Doc. 25) to suppress is **denied**.

**IT IS SO ORDERED.**

**DATED** this 13th day of May, 2021.

								_____
								Leonard T. Strand, Chief Judge